UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MINDY C.,

                 Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.

Case No. C22-5366-MLP

ORDER

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income ("SSI"). Plaintiff contends the administrative law judge ("ALJ") erred in (1) evaluating the medical opinions and evidence; (2) discounting Plaintiff's testimony; (3) discounting the lay witness testimony from Plaintiff's friend, C.S.;[1] and (4) evaluating Plaintiff's residual functional capacity ("RFC") and formulating the hypothetical to the vocational expert ("VE") at step five. (Dkt. # 15 at 1.) As discussed below, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

---

[1] Because this Order contains potentially sensitive medical information, the Court refers to Plaintiff's friend by her initials.

ORDER - 1

## II.    BACKGROUND

Plaintiff was born in 1967, and has a GED. AR at 135, 145. Plaintiff last worked as a cashier at a gas station in approximately 2004. *Id.* at 136-38, 71 (noting that Plaintiff has not worked at the substantial gainful activity level for the past fifteen years).

Plaintiff first applied for benefits in 2012 and, following a February 2014 hearing, an ALJ found that Plaintiff suffered from several severe mental and physical impairments, including degenerative disc disease ("DDD"), osteoarthritis, carpal tunnel syndrome ("CTS"), fibromyalgia, obesity, major depressive disorder, panic order with agoraphobia, and anxiety disorder, and ultimately concluded that Plaintiff was disabled as of March 8, 2012. AR at 206-12. Plaintiff, however, was subsequently incarcerated from September 2015 through October 2016, during which time her benefits terminated. Plaintiff was released from confinement and subsequently filed for SSI benefits again on October 20, 2016. *Id.* at 467-69, 66, 255.

In her October 2016 application, Plaintiff alleged disability beginning January 1, 2004. AR at 450. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 213, 232, 301-03. The ALJ held a hearing on March 24, 2019, and issued an unfavorable decision on May 6, 2019. *Id.* at 127-66, 255-65. On April 18, 2020, the Appeals Council reversed and remanded the case to the ALJ. *Id.* at 275-77. On December 10, 2020, the same ALJ held a new hearing and subsequently denied Plaintiff's application on January 6, 2021. *Id.* at 167-201, 59-73.

Using the five-step disability evaluation process, the ALJ found, in pertinent part, that Plaintiff has the following severe impairments: lumbar spine DDD, left side CTS, left shoulder DDD with tendon tear, asthma and chronic obstructive pulmonary disease ("COPD"), obesity,

depression, post-traumatic stress disorder ("PTSD"), and methamphetamine use disorder. 20 C.F.R. § 416.920; *see also* AR at 61. The ALJ subsequently determined that Plaintiff retained a residual functional capacity ("RFC") for light work with several additional postural, environmental, exertional, cognitive, and social limitations. AR at 64-65. Relying on the opinion of a vocational expert who testified that an individual with such an RFC could perform jobs existing in significant numbers in the economy, including office cleaner, pricer, and office helper, the ALJ concluded that Plaintiff was not disabled. *Id.* at 71-72.

Plaintiff again requested Appeals Council review of the ALJ's January 2021 decision, and the Appeals Council denied review on March 16, 2022, making the ALJ's decision the Commissioner's final decision. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

## III.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds* by 20 C.F.R. § 416.920(a) (citations omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical

testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.    DISCUSSION

As noted, Plaintiff suffers from both physical and mental impairments. Because several of the issues and the Court's corresponding analysis are specific to the type of impairment, the Court addresses separately Plaintiff's mental and physical impairments as warranted.

## A.    Plaintiff's Physical Impairments

### 1.    The ALJ Erred in Failing to Evaluate Dr. Leinenbach's Opinion Regarding Plaintiff's Physical Impairments.

The ALJ gave "significant weight" to and adopted in large part the "middle ground" RFC limitations opined to by non-examining consulting state agency physician, Dr. Platter, in concluding that Plaintiff was capable of light work with the following limitations:

> [Plaintiff] can occasionally climb ladders, ropes, or scaffolds. She can occasionally crawl. She can tolerate occasional exposure to concentrated levels of dusts, fumes, gases, and pulmonary irritants. She can perform occasional overhead reaching with the left non-dominant upper extremity. She can perform frequent handling and fingering with the left non-dominant upper extremity.

AR at 64, 68; *see also id.* at 244-46. The ALJ did not address non-examining Washington State Department of Social & Health Services ("DSHS") physician Dr. Derek Leinenbach's opinion that Plaintiff was limited to sedentary work. *Id.*

Plaintiff challenges the ALJ's evaluation of Dr. Platter's opinion and his failure to evaluate Dr. Leinenbach's opinion regarding her physical impairments. For the reasons below,

the Court concludes that the ALJ erred in failing to address Dr. Leinenbach's opinion, but that Plaintiff has failed to properly develop an argument regarding Dr. Platter's opinion.

### a.    Non-Examining State Agency Physician Dr. Platter

Plaintiff argues simply that "to the extent that Dr. Platter's opinion regarding [her] limitations is inconsistent with more recent clinical findings from [her] treating physicians, his opinion is entitled to little weight."[2] (Dkt. # 15 at 7; dkt. #17 at 6.) Plaintiff, however, fails to explain which limitations in Dr. Platter's opinion she challenges. She also fails to clarify which of the numerous treating physicians' clinical findings upon whom she relies, along with which particular clinical findings she claims contradict Dr. Platter's opinion. The Court declines to manufacture Plaintiff's argument for her, and thus, does not disturb the ALJ's evaluation of Dr. Platter's opinion. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (Ninth Circuit notes that it will not "manufacture arguments where none is presented"); *see also Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) ("Bare assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall far short of the requirement that counsel present 'appellant's contentions and the reasons for them.'").

### b.    Non-Examining Physician Dr. Leinenbach

In December 2016, based on his review of the medical evidence, Dr. Leinenbach opined

---

[2] The Court rejects Plaintiff's additional assertion that the ALJ erred because he characterized Dr. Platter's ultimate opinion regarding disability as "findings" rather than as an "opinion." (Dkt. # 15 at 6-7; dkt. # 17 at 6.) Plaintiff is correct that, technically, the ALJ should have referred to Dr. Platter's ultimate disability conclusion as an "opinion" rather than as "findings," and that a medical source's ultimate opinion of disability is not entitled to any weight because that is the job of the ALJ. *See* 20 C.F.R. § 416.927(d)(1). However, here, the ALJ very clearly did not simply adopt Dr. Platter's ultimate opinion that Plaintiff was not disabled. AR at 68. Rather, the ALJ set forth in detail Dr. Platter's opinion regarding Plaintiff's specific limitations prior to concluding that his opinion was entitled to "significant weight." *See id.* (noting Dr. Platter's opinions regarding Plaintiff's lifting capacity, her standing, walking, and sitting capacity, her ability to climb various items and assume particular postures, her capacity for exposure to environmental factors like fumes, odors, humidity, and her ability to work at unprotected heights and around machinery).

1    that Plaintiff was limited to sedentary work, and that she was unable to sit or stand for prolonged

2    periods, including the six hours opined by Dr. Platter. AR at 1099.

3          Plaintiff argues that the ALJ's failure to evaluate this opinion at all was harmful error

4    because the ALJ is required to evaluate every medical opinion. (Dkt. # 15 at 6.) The

5    Commissioner counters that the error was harmless, asking this Court to interpret Dr.

6    Leinenbach's opinion and find that the opinion was internally inconsistent. (Dkt. # 16 at 4.) The

7    Commissioner also asks the Court to make additional findings regarding the requirements for the

8    jobs to which the VE testified in connection with the *de novo* review of Dr. Leinenbach's

9    opinion that the Commissioner requests. *Id*. The Court declines to interpret and evaluate Dr.

10   Leinenbach's opinion in the first instance. *See Orn*, 495 F.3d at 630 (a court "review[s] only the

11   reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a

12   ground upon which he did not rely").

13         The ALJ's failure to specifically consider a medical opinion – including one from a non-

14   examining physician like Dr. Leinenbach – constitutes error. *See* 20 C.F.R. § 416.927; *see also*

15   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The ALJ must consider all medical

16   opinion evidence."); *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("an ALJ errs

17   when he rejects a medical opinion or assigns it little weight while doing nothing more than

18   ignoring it, asserting without explanation that another medical opinion is more persuasive, or

19   criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion").

20   Here, the error cannot be considered harmless because the ALJ's subsequent RFC determination,

21   step five analysis, and ultimate disability finding would likely have been different had the ALJ

22   accepted Dr. Leinenbach's opinion regarding Plaintiff's limitation to sedentary work.

23

1    The Court declines, however, to credit as true Dr. Leinenbach's opinion and find Plaintiff

2    disabled based on her physical impairments because the ALJ has not yet evaluated Dr.

3    Leinenbach's opinion. Moreover, given the Court's determination that Plaintiff failed to properly

4    develop an argument regarding Dr. Platter's conflicting opinion, it is not clear from the record

5    here that the ALJ would be required to find Plaintiff disabled if Dr. Leinenbach's opinion were

6    properly evaluated. *See Garrison*, 759 F.3d at 1020; *see also Luther v. Berryhill*, 891 F.3d 872,

7    877-78 (9th Cir. 2018) (citations omitted) ("Remand for further proceedings is appropriate where

8    there are outstanding issues that must be resolved before a disability determination can be made,

9    and it is not clear from the record that the ALJ would be required to find the claimant disabled if

10   all the evidence were properly evaluated.").

11   Accordingly, the Court remands for the ALJ to evaluate, during the first "round" or

12   "stage" of the proceedings in this drug or alcohol use ("DAA") case, Dr. Leinenbach's medical

13   opinion. *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007) (describing process utilized in

14   DAA cases). Additionally, the ALJ is required to reconsider – if warranted by his findings on

15   remand regarding Dr. Leinenbach's opinion – his additional findings at step four regarding

16   Plaintiff's RFC as pertains to her physical impairments and to reformulate the step five

17   hypothetical posed to the VE.

### 2.    The ALJ Erred in Rejecting Plaintiff's Pain Testimony Regarding Her Physical Impairments.

18
19   Plaintiff submitted a 2016 function report and testified at hearings in 2019 and 2020. AR

20   at 507-13 (function report), 127-66 (March 2019 testimony), 167-201 (December 2020

21   testimony). In 2019, Plaintiff testified that her lower back DDD was the impairment that most

22   significantly affects her. *Id.* at 142-44. In 2020, Plaintiff testified that her back pain is constant.

23

*Id.* at 190. She explained that her back impairments have been treated with pain medications and multiple injections due to her weight. *Id.* at 180-81, 188.

As for sitting, Plaintiff testified that that she would not be able to do a job that required a lot of sitting because she has to get up and move approximately every fifteen minutes or so. AR at 142-44, 152. Regarding standing, Plaintiff attested that she is unable to stand for more than twenty-five to thirty minutes at a time before she is required to change positions because her lower back vertebrae are not aligned, and it puts pressure on her spine. *Id.* at 144, 186. She testified that she is required to lay down every day due to pain, and, specifically, that this occurs at least four times per day for approximately ten to thirty minutes each time so that she can alternately ice and apply heat to her back. *Id.*

In 2020, Plaintiff also testified that following her first March 2019 hearing, she had CTS and left shoulder surgery in 2019 and 2020, respectively, and that her CTS and shoulder impairments were "not 100%" but that they were better than they had been pre-surgery. AR at 180.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" without pointing to any affirmative evidence of malingering. AR at 66. Accordingly, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms. *Tommasetti*, 533 F.3d at 1039.

The ALJ provided five reasons for rejecting Plaintiff's testimony regarding the limitations associated with her physical impairments, including: (1) that Plaintiff's "impairments have been described as mild, and objective medical evidence of the record has been relatively benign and unimpressive"; (2) "imaging has show[n] a mild degree of limitation"; (3) Dr.

1   Gaffield's physical examination findings were "so unremarkable that he opined [Plaintiff] has no

2   work-related limitation whatsoever"; (4) Plaintiff has had "some relief from injections"; and (5)

3   Plaintiff recovered well from her CTS and shoulder surgeries.[3] AR at 70.

4           a.      **"Mild" and "Unimpressive and Benign" Objective Medical Evidence**[4]

5           The ALJ characterized Plaintiff's examinations as "unremarkable," citing to Plaintiff's

6   December 2016 and January 2019 visits to her primary care physician, Dr. Lakin, Plaintiff's May

7   2017 visit to Nurse Practitioner ("NP") Waggoner at Olympia Orthopedics, and to January 2019

8   notes from Plaintiff's visit with treating specialist, Dr. Ryan Halpin at Olympia Orthopedics. AR

9   at 70, 66 (citing *id.* at 755, 843-44, 858, 874). Not only are the particular records "cherry-

10  picked," but they also fail to contradict Plaintiff's pain testimony. *See Johnson v. Kijakazi*, 2022

11  WL 1553259, at *2 (9th Cir. May 17, 2022) (discussing *Carmickle v. Comm'r, Soc. Sec. Admin.*,

12  533 F.3d 1155, 1161 (9th Cir. 2008)) (concluding that ALJ's finding that claimant possessed

13  "normal to mild cardiac diagnostic findings" did not constitute a sufficient reason for rejecting

14  the claimant's testimony regarding the "intensity, persistence and limiting effects" of her

15

16

17  [3] The ALJ did not include any record citations in support of his reasons for rejecting Plaintiff's testimony.
    AR at 70. However, the Court has referenced the record citations provided by the ALJ earlier in his

18  decision setting forth the medical evidence regarding Plaintiff's physical impairments. *Id.* at 66-67.

19  [4] The Court considers here only those reasons proffered by the ALJ for rejecting Plaintiff's testimony
    regarding her physical impairments. The ALJ explicitly offered distinct reasons for rejecting Plaintiff's

20  testimony regarding her physical versus mental impairments. *See* AR at 70-71 (offering reasons from both
    a "physical standpoint" and "from a psychological perspective"). The ALJ's references to Plaintiff's

21  methamphetamine use, her activities of daily living, and her criminal history were reasons that the ALJ
    provided for rejecting Plaintiff's testimony regarding the limitations associated with her *mental*
    impairments – not with his rejection of the Plaintiff's testimony regarding the limitations associated with

22  her *physical* impairments. *See id.* at 71; *see also* dkt. # 15 at 16; dkt. #16 at 8-9; dkt. # 17 at 7-8. For
    reasons discussed in more detail in the Order below, the Court, however, declines to reach the issue

23  regarding the ALJ's rejection of Plaintiff's testimony as to her *mental* impairments.

impairments where the medical records did "not contain evidence that fully explains her symptoms, but they also [did] not contradict her account of those symptoms").

For example, just two months after Dr. Lakin's cited December 2016 visit, Dr. Lakin referred Plaintiff to an orthopedist and for an MRI and physical therapy based on Plaintiff's increasing pain and radiculopathy. *See* AR at 755, 751-52, 998. Additionally, the cited notes from Plaintiff's 2017 and 2019 visits to NP Waggoner, Dr. Halpin, and Dr. Lakin reveal that Plaintiff was actually seen on those occasions because her pain had increased. *See id.* at 843-44 (Dr. Halpin notes in January 2019 that Plaintiff's pain had increased since her last injection, and refers Plaintiff to another physician for a transforaminal epidural); *id.* at 858 (NP Waggoner notes in May 2017 that Plaintiff was experiencing worsening hip pain); *id.* at 874 (Dr. Lakin notes in January 2019 that Plaintiff experienced increased lumbar pain and again referred her to an orthopedist). Accordingly, this reason is neither clear nor convincing.

### b.   Imaging

In 2017, Plaintiff underwent several x-rays and MRIs, which revealed mild to moderate arthrosis at L4-S1, multilevel DDD and spondylosis at L4-L5, mild thoracolumbar scoliosis, mild facet arthropathy at L4-L5 and L5-S1, and exaggerated lumbar lordosis. AR at 798, 816, 858. A May 2017 MRI showed no signs of disc protrusion or extrusion or of significant central canal or neuroforaminal stenosis. *Id.* at 858. However, two years later, in 2019, subsequent MRIs and x-rays revealed that Plaintiff indeed suffers from bilateral foraminal stenosis at L3-4 and L4-5 and on the right side at L5-S1, degenerative anterolisthesis at L4-5, and lumbar radiculopathy. *Id.* at 1226, 1229, 1496, 1518.

In characterizing the imaging as demonstrating "mild limitations," the ALJ provided no record citations with his rejection of Plaintiff's testimony; however, in an earlier discussion of

the medical evidence, the ALJ cited to Plaintiff's MRIs and x-rays from 2017. AR at 70, 66

(citing *id.* at 798, 816, 858); *id.* at 798 (February 2017 MRI); *id.* at 816 (March 2017 x-ray); *id.*

at 858 (May 2017 MRI). Notably, the ALJ overlooked the more recent June 2019 MRI, which

revealed additional back impairments. *See id.* at 1496, 1219-20 (demonstrating bilateral

foraminal stenosis at L3-4 and L4-5 and on the right side at L5-S1, degenerative anterolisthesis

at L4-5, and lumbar radiculopathy). Regardless of the oversight, though, none of the cited

imaging results contradicted Plaintiff's pain testimony, and this reason was not sufficiently clear

and convincing. *See Johnson*, 2022 WL 1553259, at *2.

### c.    Dr. Gaffield's Examination Findings

In rejecting Plaintiff's testimony, the ALJ also cited to January 2017 physical

examination observations from a physician whose opinion the ALJ discredited, Dr. Gaffield, an

examining consulting state agency physician. AR at 66, 69, 70 (discussing *id.* at 736-41).

Specifically, the ALJ found that Dr. Gaffield's opinion that Plaintiff possessed no limitations and

was capable of a full range of work was contradicted by the medical evidence showing that

Plaintiff had several severe physical impairments. *Id.* at 69. Given the ALJ's reasons for

discrediting Dr. Gaffield's opinion, Dr. Gaffield's underlying findings did not constitute clear

and convincing reasons for rejecting Plaintiff's pain testimony. *See also id.* at 70 (ALJ

recognizes the limited value of Dr. Gaffield's findings given that his "conclusion [was] not

consistent with the over[all] treatment record").

### d.    Improvement with Injections

The ALJ additionally cited to the fact that Plaintiff received some "relief from injections"

as a reason for discounting her pain testimony. AR at 70, 66 (citing *id.* at 752, 815, 850, 852,

855). Plaintiff's relief, however, was short-lived, as evidenced by her medical records and the

fact that she required multiple injections and epidurals over the years. *See id.* at 1497, 98-102, 1464; *see also id.* at 843-44 (Dr. Halpin notes in January 2019 that Plaintiff is experiencing increased pain since her last injection, and refers Plaintiff to Dr. Taylor for L4-5 transforaminal epidural). Accordingly, this reason also was not clear or convincing. *See Garrison*, 759 F.3d at 1017 ("Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

### e.   Recovery from Surgeries

As noted, in 2019 and 2020, Plaintiff had CTS release surgery and shoulder surgery. AR at 1509-10 (December 2019 carpal tunnel surgery), 1454 (September 2020 shoulder surgery). Absent any record citation, the ALJ cited as a reason for rejecting Plaintiff's testimony the fact that Plaintiff recovered well from the surgeries. *Id.* at 70. While this reason may be accurate, it does not address the impairment that Plaintiff testified caused her the most significant pain – namely, her lower back. *See id.* at 142; *see also id.* at 1482 (Physician's assistant, Christopher Spikes, reports in February 2020 that Plaintiff is "progressing well" after CTS surgery); *id.* at 1440 (Physician's assistant, Alex Pittman, notes in October 2020 that Plaintiff reported that her shoulder "pain is completely gone"). Therefore, this reason fails as well.

In sum, the ALJ's rejection of Plaintiff's testimony regarding her physical impairments, pain, and related limitations, was not supported by clear and convincing reasons. On remand, the ALJ is required to reassess and accord appropriate weight to Plaintiff's pain testimony during the same "round one" analysis in which the ALJ evaluates Dr. Leinenbach's opinion. Additionally, the ALJ is required to reconsider, if warranted by his findings on remand regarding Plaintiff's

testimony, his additional findings at step four regarding Plaintiff's RFC as pertains to her physical impairments and to reformulate the step five hypothetical posed to the VE.

### 3. The ALJ Erred in Rejecting Lay Witness Testimony Regarding the Limitations Associated with Plaintiff's Physical Impairments.

In 2016, C.S., Plaintiff's friend with whom she lived, also submitted a function report. C.S. stated that she had known Plaintiff for more than twenty-five years, and that Plaintiff's "back pain and pain in her hands prevent her from doing a lot." AR at 499. C.S. explained that Plaintiff is unable to "lift anything," and that her it takes her longer than normal to prepare simple meals and to do light cleaning and laundry. *Id.* at 497. C.S. added that Plaintiff cares for her "little dog," and that she gets out once a day to walk her dog. *Id.* at 496, 498.

The ALJ rejected C.S.'s testimony for the same reasons that he rejected Plaintiff's testimony, finding that it was "inconsistent with and unsupported by the objective findings in the record, including largely unremarkable examination findings and normal observations by providers." AR at 70 (citing *id.* at 755, 814-16, 735-41, 819, 843-44, 858, 850-52, 874) .

An ALJ must provide "germane reasons for discounting lay witness testimony. *See Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2018). For the same reasons as those discussed above regarding Plaintiff's testimony, the Court concludes that the ALJ's reasons for rejecting C.S.'s testimony were not germane. On remand, the ALJ is also required to reassess and accord appropriate weight to C.S.'s testimony regarding Plaintiff's physical impairments during the same "round one" analysis in which the ALJ evaluates Dr. Leinenbach's opinion and Plaintiff's testimony regarding her physical impairments. Additionally, the ALJ is required to reconsider, if warranted by his findings on remand regarding C.S.'s testimony, his additional findings at step four regarding Plaintiff's RFC as pertains to her physical impairments and to reformulate the step five hypothetical posed to the VE.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**B.      Plaintiff's Mental Impairments**

**1.      The ALJ Erred in Assessing the Medical Opinions Regarding Plaintiff's Mental Impairments. [5]**

In assessing Plaintiff's RFC, the ALJ rejected all of the medical opinions opining to marked limitations, including both opinions from the only examining clinicians: psychologist Dr. Terilee Wingate and psychiatrist Dr. Pamela Moslin-Lykins. AR at 68-70, 1084-91, 743-50. The ALJ also rejected two opinions including marked limitations from non-examining DSHS clinicians, Dr. Michael Jenkins and Dr. Leinenbach. *Id.* at 69-70, 1093-95, 1096-1101.

By contrast, the ALJ afforded "significant weight" to the two opinions of non-examining state agency psychologists, Drs. Patricia Kraft and Jan Lewis, in which both psychologists opined to minimal or moderate functional limitations. AR at 68-69, 221-24, 226-28, 242-43, 246-48. Regarding Plaintiff's mental impairments, the ALJ ultimately concluded that Plaintiff had the ability to "understand, remember, and apply short and simple instructions in order to perform routine, predictable tasks, not in a fast-paced production-type environment." *Id.* at 65-65. The ALJ specified that Plaintiff "can make simple decisions" and "can tolerate . . . routine

---

[5] The Court notes that Plaintiff also argues generally – over eight pages – that the ALJ failed to properly evaluate "other medical evidence," and that this failure constituted error because the medical evidence supported the challenged medical opinions. (Dkt. # 15 at 15.) Plaintiff, however, fails to develop a coherent argument or specify which medical evidence she contends supports a particular challenged medical opinion. Given that Plaintiff has challenged multiple medical opinions, this lack of clarity and delineation very clearly falls short of appellate review requirements. *See Putz v. Kijakazi*, 2022 WL 6943095 (9th Cir. Oct. 12, 2022) (citing *Sekiya*, 508 F.3d at 1200). While the Court has reviewed the administrative record in conjunction with its analysis of the ALJ's treatment of the medical opinions, including the evidence cited by Plaintiff, the Court will not "manufacture arguments where none is presented." *Indep. Towers*, 350 F.3d at 929. Counsel is further admonished that in future cases filed before this Court, he is required to delineate and explain which challenged medical evidence supports a particular challenged medical opinion – and why. *See Putz,* 2022 WL 6943095, at *2 (noting that claimant waived "any argument based on [clinical] findings" where claimant, who was represented by the same counsel as the instant case, "simply list[ed] numerous clinical findings, unaccompanied by argument").

1   workplace changes . . . [and] occasional interaction with the general public and with co-

2   workers." *Id.* at 65.

3       For the reasons that follow, the Court concludes that ALJ erred in evaluating the medical

4   opinions from Drs. Moslin, Wingate, Kraft, and Lewis.

5                   **a.     Legal Standards**

6       The Commissioner's rules and regulations regarding the evaluation of medical evidence

7   were revised in March 2017, and apply to claims filed on or after March 27, 2017. *See* 20 C.F.R.

8   § 416.920c. For claims filed before March 27, 2017, the rules in 20 C.F.R. § 416.927 apply. *Id.*

9   Because Plaintiff's claims were filed before March 27, 2017, the Court applies the rules then in

10  effect under 20 C.F.R. § 416.927.

11      For claims filed before March 27, 2017, a treating physician's opinion is generally

12  entitled to greater weight than an examining physician's opinion, and an examining physician's

13  opinion is entitled to greater weight than a non-examining physician's opinion. *Garrison*, 759

14  F.3d at 1012. An ALJ may only reject the uncontradicted opinion of a treating or examining

15  doctor by giving "clear and convincing" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir.

16  2017). Even if a treating or examining doctor's opinion is contradicted by another doctor's

17  opinion, an ALJ may only reject it by stating "specific and legitimate" reasons. *Id.*

18                  **b.     Examining Psychiatrist Dr. Moslin**

19      In January 2017, Dr. Moslin reviewed Plaintiff's medical records, interviewed and

20  examined Plaintiff, and administered several cognitive tests prior to diagnosing Plaintiff with

21  major depression. AR at 747. Dr. Moslin opined that Plaintiff's prognosis was "poor" given her

22  low level of functioning and "distress tolerance." *Id.* at 748. She opined that Plaintiff would

23  likely have conflict with her supervisors, and would also likely have "conflict and confrontation"

1   with her coworkers and the public because Plaintiff "is generally an irritable person." *Id.* Dr.

2   Moslin further opined that Plaintiff would have difficulty completing a normal workday or

3   workweek due to her mental impairments, and that she would have difficulty dealing with the

4   stress of a workplace. *Id.*

5        The ALJ concluded that Dr. Moslin's opinion was entitled to little weight, suggesting that

6   Dr. Moslin's opinion was based on a single examination and Plaintiff's self-reports rather than

7   "clinical findings or other actual evidence." AR at 69. The ALJ further suggested that Dr.

8   Moslin's opinion was inconsistent with her own examination findings, noting that although

9   Plaintiff presented as "tearful and depressed," she was also "polite and cooperative," with

10  "organized" and "linear" thoughts, and only "slightly irritable." *Id.* In support, the ALJ noted that

11  she found the opinions of state agency non-examining consultants, Drs. Lewis and Kraft, "more

12  persuasive" because they "reviewed a substantial amount of evidence throughout the period at

13  issue, including [Dr. Moslin's] report." *Id.*

14       Plaintiff argues that the ALJ's reasons for rejecting Dr. Moslin's opinion were neither

15  specific nor legitimate. The Court agrees. The first reason – that Dr. Moslin's opinion was based

16  on a single examination – is disingenuous given that the ALJ proceeded to adopt the opinions of

17  consulting state agency psychologists who failed to conduct *any* examination. Second, it was

18  error for the ALJ to reject Dr. Moslin's opinion based on Plaintiff's subjective self-reporting,

19  especially given that Dr. Moslin also relied on objective procedures and tests. *See Buck v.*

20  *Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (noting that psychiatric "[d]iagnoses will always

21  depend in part on the patient's self-report"). Third, the ALJ's determination that Dr. Moslin's

22  opinion was internally inconsistent with her findings was not supported by substantial evidence.

23  That Plaintiff presented as "polite and appropriate" did not undermine Dr. Moslin's additional

1    observations regarding Plaintiff's lack of eye contact and her slightly "irritable" and "guarded"

2    demeanor. AR at 69, 746. Nor did it undermine Dr. Moslin's opinions regarding Plaintiff's

3    inability to interact with others and to deal with the normal stresses of a workplace. *Id.* at 747-48.

4    The Court discusses below the final reason offered by the ALJ for rejecting Dr. Moslin's opinion

5    – the persuasiveness of the state agency consultants' opinions – in conjunction with its

6    discussion of Drs. Kraft's and Lewis' opinions.

7                      **c.      Examining Psychologist Dr. Wingate**

8            Dr. Wingate examined Plaintiff several times between 2008 and 2016 for the purpose of

9    performing consultative mental health examinations. *See* AR at 209 (ALJ's 2014 decision noting

10   2008 opinion from Dr. Wingate); *id.* at 1076-83 (Dr. Wingate's April 2014 opinion); *id.* at 1084-

11   92 (Dr. Wingate's November 2016 opinion). The ALJ, however, considered only Dr. Wingate's

12   most recent 2016 opinion in his January 2021 decision. *Id.* at 69.

13           In conjunction with her November 2016 opinion, Dr. Wingate reviewed Plaintiff's

14   medical records, interviewed Plaintiff, and administered a mental status examination and several

15   cognitive tests. AR at 1084-92. Dr. Wingate diagnosed major depressive disorder, PTSD, and

16   methamphetamine use disorder in remission. *Id.* at 1086. She found that Plaintiff possessed

17   numerous moderate functional limitations and several marked limitations as pertained to her

18   abilities to maintain regular attendance and perform activities on a schedule, maintain

19   appropriate behavior in a work setting, and to complete a normal workday and workweek

20   without interruptions from psychologically-based symptoms. *Id.* Overall, Dr. Wingate opined

21   that the impact of Plaintiff's mental impairments on her RFC was marked. *Id.*

22           In December 2016 and December 2018, non-examining DSHS clinicians, Drs. Jenkins

23   and Leinenbach, reviewed Plaintiff's medical records, including the opinion of Dr. Wingate, and

agreed with the marked limitations opined to by Dr. Wingate. AR at 1093-94 (Dr. Jenkins opined

in 2016 that Plaintiff's depression and PTSD resulted in the same three marked impairments

opined to by Dr. Wingate). Dr. Leinenbach also found that that Plaintiff possessed an additional

marked limitation in terms of her ability to communicate and perform effectively. *Id.* at 1094-96.

The ALJ rejected Dr. Wingate's opinion as "unpersuasive." AR at 69. In support, the ALJ

noted without elaboration that Plaintiff had been receiving SSI benefits until she went to prison

in 2015, and that she has a history of significant methamphetamine use. *Id.* at 69-70. The ALJ

further suggested that Dr. Wingate's opined marked limitations were insufficiently explained and

were unsupported by Dr. Wingate's own mental status examination findings. The ALJ rejected

Drs. Jenkins' and Leinenbach's opinions for the same reasons that he rejected Dr. Wingate's

opinion. *Id.*

Again, Plaintiff argues that the ALJ's reasons for rejecting Dr. Wingate's and Drs.

Jenkins' and Leinenbach's opinions were not sufficiently specific or legitimate. However,

because Drs. Jenkins and Leinenbach were non-examining psychologists, the ALJ was simply

required to explain why he rejected their opinions in favor of other conflicting medical opinions

from non-examining physicians. *See Garrison,* 759 F.3d at 1010-12 (ALJ is responsible "for

resolving ambiguities" in the record); *see also* 20 C.F.R. § 416.927 (ALJ must consider the entire

case record, including each medical opinion in the record, together with the rest of the relevant

evidence). Plaintiff, however, fails to develop an argument as to Dr. Leinenbach's and Jenkins'

opinions.

Turning to Dr. Wingate's opinion, first, while an ALJ may discredit a *claimant's*

allegations based on relevant character evidence including criminal history, here, the ALJ

erroneously utilized Plaintiff's criminal history to discredit the psychologist's opinion without

explaining its relevance to the opinion. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (discussing bases on which an ALJ may reject claimant's testimony). As such, it did not qualify as a specific and legitimate reason to discount the doctor's opinion. *See, e.g., Anders v. Colvin*, 2015 WL 94736, at *5 (E.D. Wash. Jan. 7, 2015) (where relevance of a claimant's criminal history is not clearly explained by the ALJ, it does not qualify as a specific, clear and convincing reason for discounting the claimant's credibility); *accord Scott v. Colvin*, 2016 WL 1274553, at *7 (E.D. Wash. Mar. 31, 2016).

Second, the ALJ similarly failed to explain how Plaintiff's prior receipt of SSI benefits impacted his evaluation of Dr. Wingate's opinion. Indeed, Plaintiff's prior receipt of SSI benefits suggested that Plaintiff had previously been found disabled and was, as late as 2014, incapable of working. Accordingly, this did not constitute a specific and legitimate reason.

Nor was the Plaintiff's history of methamphetamine use a specific and legitimate reason for rejecting Dr. Wingate's opinion, given the ALJ's stage of the analysis at the time he evaluated Dr. Wingate's opinion. Here, the ALJ was completing "round one" of a required two-stage or "round" analysis, during which he was supposed to consider the combined effect of Plaintiff's DAA *without* separating out the DAA. *See Parra*, 481 F.3d at 746; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001) (interpreting 20 C.F.R. §§ 404.1535, 416.935 regarding DAA procedure); *see also* Social Security Ruling ("SSR") 13-2p, Evaluating Cases Involving Drug Addiction and Alcoholism (DAA), 2013 WL 621536, at *1 (Feb. 20, 2013). Because the ALJ had not yet considered the materiality of Plaintiff's DAA during this first

round, it was error for the ALJ to utilize it as a reason for discrediting Dr. Wingate's opinion at that point in his analysis. [6]

Finally, the ALJ's reasoning that Dr. Wingate failed to support her findings of marked limitations overlooks the bases for Dr. Wingate's opinion and mischaracterizes her clinical findings. *See* AR at 70 (asserting that "Dr. Wingate did not explain why she felt the claimant would have marked limitations in the aforementioned areas"). As noted, Dr. Wingate examined Plaintiff several times from 2008-2016 and, in addition to making new clinical findings in 2016, Dr. Wingate incorporated her lengthy 2014 clinical interview findings into her 2016 opinion. *See id.* at 1084 (referring to prior evaluation for Plaintiff's full history). While Dr. Wingate may have simply checked boxes regarding her assessment of Plaintiff's functional limitations, those check-box assessments were based on several pages of clinical findings and observations from her examination and interview of Plaintiff and her administration of several tests. *See id.* at 1084-85, 1087-88. Moreover, Dr. Wingate found that Plaintiff's depression was severe; she "felt hopelessness and worthlessness," was "quick to anger," continued to report "problems with attention and memory," and suffered from psychotic symptoms; her thought process and content were not within normal limits; and her future prognosis for work was "guarded to poor." [7] *See id.*

Accordingly, the ALJ's rejection of Dr. Wingate's opinion was not supported by specific and legitimate reasons. The Court declines to reach the issue of the ALJ's rejection of Drs.

---

[6] The Commissioner recognizes that the ALJ has not yet conducted the second round of the DAA analysis. (Dkt. #16 at 13 (noting that ALJ has not yet evaluated "whether [Plaintiff's] ongoing drug abuse was material to her alleged disability").)

[7] In a new argument before this Court, the Commissioner argues that Dr. Wingate's findings regarding Plaintiff's psychotic symptoms were erroneous. (Dkt. #16 at 3.) The Court, however, is "constrained to review the reasons *the ALJ* asserts," and thus does not consider the additional reasons proffered by the Commissioner. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (emphasis added); *see also Orn*, 495 F.3d at 630 (stating that the court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely").

Leinenbach's and Jenkins' opinions because Plaintiff failed to develop a sufficient argument. The ALJ can nevertheless revisit those opinions as warranted on remand.

### d.   Non-Examining State Agency Psychologists Drs. Kraft and Lewis

In February 2017, Dr. Kraft reviewed Plaintiff's medical records and opined, contrary to the four medical opinions discussed above, that Plaintiff was not significantly limited in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, or in her ability to perform activities within a schedule and maintain regular attendance. AR at 227. Subsequently, in May 2017, on reconsideration, Dr. Lewis similarly opined that Plaintiff possessed only moderate – as opposed to marked – limitations in those categories. *Id.* at 247. Additionally, while Drs. Lewis and Kraft both opined that Plaintiff possessed moderate limitations in her ability to interact appropriately with the general public and coworkers, they opined, contrary to the examining clinicians above, that Plaintiff was not significantly limited in her abilities to maintain socially appropriate behavior and to accept instructions and respond appropriately to criticism from supervisors. *Id.* at 227, 247. In support, Drs. Kraft and Lewis both noted that Plaintiff "retain[ed] the mental capacity to engage in superficial interactions with others on an occasional basis" and to "accept instructions from a supervisor." *Id.* at 228, 247. Dr. Lewis further opined that Plaintiff was not significantly limited in her ability to respond appropriately to changes in the work setting. *Id.* at 248.

The ALJ gave significant weight to Drs. Lewis' and Kraft's opinions for five reasons: (1) Plaintiff's mental health treatment was "spotty" and "she missed counseling appointments," thus suggesting that her symptoms were not as significant as alleged; (2) she was stable on medications while incarcerated; (3) her mental status examinations were "normal"; (4) she is able to "take care of herself" and "do all activities of daily living, and leave her home daily"; and

(5) the state agency consultants' familiarity with Social Security regulations and rulings. AR at 68.

Plaintiff argues that the ALJ erred in affording more weight to the non-examining psychologists' opinions than he did to Drs. Wingate's and Moslin's opinions. The Court agrees.

At the outset, the Court notes that the Commissioner argues that the ALJ need not provide any reasons for *accepting* the state agency consultants' opinions, thus suggesting that the Court need not review the ALJ's reasons for adopting Drs. Kraft's and Lewis' opinions. (Dkt. #16 at 7.) Here, though, the ALJ specifically noted as a reason for rejecting examining psychiatrist Dr. Moslin's opinion that he found "more persuasive the statements of the [s]tate [a]gency psychologists." AR at 69. Thus, the Court will consider these reasons as well in evaluating whether the ALJ rejected Drs. Moslin's and Wingate's opinions based on specific and legitimate reasons.

### i.   *Plaintiff's "Spotty" Mental Health Treatment*

The ALJ accurately noted that Plaintiff missed several appointments during the time she received mental health care from BHR clinicians, which occurred following her late 2016 release from prison and prior to her subsequent April 2018 confinement. *See* AR at 68; *but see id.* at 834 (clinician notes in March 2017 that Plaintiff reported that she was "having difficulty keeping track of her [multiple] appointments," and after working with Plaintiff on her "disorganization," Plaintiff confirms she is "getting a planner today" and "writ[ing] everything down"); *see also id.* at 672 (Department of Corrections ("DOC") clinician notes psychomotor retardation, flat affect, and poor attention and concentration during mental status examination in September 2016); *id.* at 692 (DOC mental health clinician notes short-term and long-term memory impairment and that Plaintiff complained of "a very bad memory with many blank spots" in January 2016); *id.* at

1    1582 (Northwest Resources therapist, Steven Wolff, and psychiatrist, Dr. Jordan Morris, note

2    that Plaintiff is "unable to remember much of her childhood"). It is true that, "*in assessing a*

3    *claimant's credibility*, the ALJ may properly rely on 'unexplained or inadequately explained

4    failure to follow a prescribed course of treatment.'" *Molina*, 674 F.3d at 1113 (emphasis added)

5    (quoting *Tommasetti*, 533 F.3d at 1039). However, here, the ALJ improperly utilized Plaintiff's

6    missed appointments not in evaluating Plaintiff's symptom testimony or her credibility, but

7    instead in discrediting the opinions of the examining clinicians.

8                    ii.    *Plaintiff's Improvement on Medications*

9           The ALJ also reasoned that the state agency consultants' opinions were more persuasive

10   because Plaintiff was stable while on medication during her 2016 incarceration. AR 68 (citing *id.*

11   at 681, 701). The ALJ, however, has cherry-picked particular observations in the DOC records in

12   asserting that Plaintiff was "stable." *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017)

13   (improper for ALJ to "cherry-pick" absence of certain symptoms from medical evidence as

14   opposed to undertaking a "broader development" of the evidence in its entirety). Indeed, Plaintiff

15   reported that she was "pleased" with her antidepressant, Effexor, during a January 2016 visit,

16   and a clinician also observed Plaintiff in a "stable mood" in June 2016. AR at 681, 701.

17   However, the DOC records additionally demonstrate that Plaintiff's mental health waxed and

18   waned around these times as well. *See id.* at 696 (reporting, later in January 2016, drastic mood

19   swings, rage, overwhelm around people such that she sits in her room "where [she is] safe"); *id.*

20   at 683, 690 (reporting stress and depression and a desire to stay indoors and isolated despite

21   "nice weather" in May 2016); *id.* at 676 (Plaintiff is referred to psychiatry for medication

22   management "due to severe depression" in August 2016). For these reasons, the DOC records

23   regarding Plaintiff's condition on medication did not constitute a specific and legitimate reason

for discrediting the opinions of the examining clinicians. *See Garrison*, 759 F.3d at 1017 (noting that mental health symptoms "wax and wane," and that it is error to pick out isolated instances of improvement).

iii.   *Plaintiff's Mental Status Examinations*

The ALJ additionally cited to Plaintiff's "normal mental status examination findings" ("MSE") in Plaintiff's post-incarceration substance abuse treatment records from December 2016 through February 2019. AR at 67-68 (citing *id.* at 799-808, 1029 (Northwest Resources psychiatrist Dr. John Morris' May 2017 findings), 1102-1213 (Northwest Resources records)). The ALJ fails to explain his characterization of the cited MSEs as "normal" in his discussion of the medical opinions; however, earlier in his decision, the ALJ stated that Plaintiff's MSE findings showed that she was "'within normal limits' for insight, judgment, delusions, perceptions, mood, affect, thought productivity, orientation, and continuity." *See id.* at 67-68.

Again, here, the ALJ has "cherry-picked" a limited subset of Plaintiff's medical records in characterizing Plaintiff's MSEs as "normal." AR at 68 (citing in part *id.* at 1160-77, 1141-59, 1124-44, 1112-23) (four "biopsychosocial assessments," included among the Northwest Resources medical records, dated December 2016-February 2019). Even more importantly, the ALJ fails to articulate how the cited records – the biopsychosocial assessments – demonstrate "normal" MSE findings, or how they undermine Drs. Moslin's and Wingate's opinions. In fact, some of the ALJ's cited records suggest the contrary, as does a review of Plaintiff's longitudinal medical record during the relevant period from 2016-2021. *See id.* at 1199-1200 (Northwest Resources clinician notes in December 2018 chemical dependency evaluation that Plaintiff needs a mental health assessment given her anxiety, depression, and ADHD); *id.* at 1107-08 (Northwest Resources clinician notes that Plaintiff is fidgety, with "little eye contact," "agitated,

evasive," anxious, and having difficulty remembering "large portions of her childhood" during February 2019 mental health assessment); *see also id.* at 14-26, 82-84, 1532, 1556, 1567, 1569, 1572-73, 1575 (observations by Plaintiff's chemical dependency counselor, Jillian White, regarding Plaintiff's presentation as depressed and frustrated, negative, down, ruminating, erratic, and unable to stay engaged); *id.* at 960-62, 1284-85, 1273 (observations, diagnoses, and treatment by Plaintiff's primary care physician, Dr. Lakin, for depression and bipolar disorder from 2014-2019); *id.* at 1029-30 (BHR psychiatrist Dr. Morris' 2017 diagnosis of Plaintiff with major depression, PTSD, agoraphobia and recommendations regarding treatment regimen and psychiatric medications); *id.* at 670-702, 704-05, 696-98 (mental health treatment and diagnoses while Plaintiff was in prison in 2016, including prescribed medications, and diagnosis of schizoaffective disorder, depressive type). Accordingly, this reason fails as well.

iv.   *Plaintiff's Activities of Daily Living*

In adopting the state agency consultants' opinions, the ALJ further reasoned that Drs. Kraft's and Lewis' opinions were more consistent with the evidence regarding Plaintiff's daily living activities than the opinions from examining clinicians, Drs. Moslin and Wingate. AR at 68. Specifically, the ALJ asserted that Plaintiff "is able to take care of herself, do all activities of daily living, and leave her home daily without significant difficulty." *Id.* Again, the ALJ provided no record citations in conjunction with this reason; however, earlier in his decision, in detailing Plaintiff's testimony, the ALJ cited to Plaintiff's 2016 function report. *Id.* at 65 (citing *id.* at 503-14).

The ALJ mischaracterized Plaintiff's daily activities and erred in finding that they were inconsistent with the functional limitations opined to by Drs. Moslin and Wingate. In particular, the ALJ's statement that Plaintiff "leaves her home daily" is not supported by substantial

evidence. AR at 68. At both the March 2019 hearing, and the subsequent December 2020 hearing following the Appeals Council's remand, Plaintiff testified to more limited activities than those detailed in her 2016 function report, relied on by the ALJ, and completed more than four years prior to the ALJ's January 2021 decision. *See id.* at 507, 509 (noting in 2016 function report that she has a bad memory, social anxiety, and that while she goes "outside" every day, she shops at night when there are not a lot of people at the store and goes to doctor appointments on a regular basis); *but see id.* at 154-57 (testifying in March 2019 that her depression causes her to sleep a lot, that she often does not want to get out of bed, that she has panic attacks when she is around a lot of people, such as at the grocery store, and that she often misses appointments because she forgets about them); *id.* at 184-85 (testifying in December 2020 that she does not go anywhere other than doctor appointments and grocery shopping late at night). The Ninth Circuit has repeatedly recognized that "impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016 (citing *Smolen v. Chater*, 80 F.3d 1273, 1287 n. 7 (9th Cir. 1996)).

Accordingly, Plaintiff's daily activities, as cited by the ALJ, did not constitute a specific and legitimate reason for adopting the state agency consultants' opinions and rejecting the opinions of examining clinicians, Drs. Moslin and Wingate.

v.      *Familiarity with Social Security Rules and Regulations*

Finally, the ALJ found that Drs. Lewis' and Kraft's opinions were more persuasive because they were "familiar with Social Security regulations and rulings, and qualified to render medical opinions regarding [Plaintiff's] limitations." AR at 69. However, "merely stating the doctors are familiar with SSA regulations. . . 'does not achieve the level of specificity our prior

cases have required.'" *See Keith F. v. Comm'r of Soc. Sec.*, 2020 WL 7383351, at *6 (W.D.

Wash. Dec. 16, 2020) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988)); *see also*

*Dipietro v. Colvin,* 2016 WL 3452909, at *9 (C.D. Cal. June 15, 2016) (rejecting as basis for

discounting treating physician's opinion that he was "not familiar" with SSA guidelines in part

because he was "undoubtedly familiar" with plaintiff). Here, Dr. Moslin was a licensed

psychiatrist and Dr. Wingate was a licensed psychologist, and the ALJ pointed to no evidence

suggesting that either Dr. Moslin or Dr. Wingate possessed a lack of familiarity with the SSA's

disability guidelines that would "cast doubt on [their] assessment of [Plaintiff's] work-related

functional limitations and ability to sustain full-time work." *Emme J. C. v. Saul*, 2021 WL

3730165, at *10 (C.D. Cal. Mar. 23, 2021) (finding that ALJ erred in rejecting treating

physician's opinion because she was "not familiar with the Social Security Administration's

precise disability guidelines").

In sum, the ALJ erred in rejecting the opinions of examining psychologist Dr. Wingate

and examining psychiatrist Dr. Moslin. Because the error resulted in an erroneous RFC

determination and disability finding, it was not harmless.

### e.   **Remedy**

The ALJ provided no proper reason for discounting the opinions of Drs. Wingate and

Moslin and finding the opinions of the state agency non-examining consultants more persuasive.

Therefore, no conflict remains to be resolved on remand with regard to the issues on which Drs.

Wingate and Moslin opined, and these opinions should be credited as true. *Cf. Treichler v.*

*Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) (The Court is "require[d] to

assess whether there are outstanding issues requiring resolution *before* considering whether to

hold that the [improperly discredited evidence] is credible as a matter of law.").

Plaintiff asks the Court to remand for an award of benefits but fails to address the fact that this is a DAA case and that further inquiry is necessary regarding the materiality of Plaintiff's methamphetamine use. Even with Drs. Wingate's and Moslin's opinions credited as true, as the Commissioner notes, a finding of disability at "round one" does not warrant an immediate award of benefits. Dkt. #16 at 13; *see also Garrison*, 759 F.3d at 1020. *Parra*, 481 F.3d at 746. The Court therefore remands to the ALJ to conduct the "round two" proceedings required in this DAA case: a second application of the five-step sequential evaluation process to determine whether Plaintiff's methamphetamine disorder is "material" to the finding that she is disabled based on her mental impairments. *See Parra*, 481 F.3d at 746.

### 2.    Additional Issues Regarding Plaintiff's Mental Impairments

Given the Court's conclusion above, and the interplay between Plaintiff's mental impairments and DAA, the Court declines to reach Plaintiff's additional issues regarding the ALJ's rejection of her testimony and the lay witness testimony. In support, the Court notes that the ALJ's "round two" DAA analysis on remand may require the ALJ to obtain additional medical evidence, opinions, and testimony regarding the materiality of Plaintiff's DAA, which will require the ALJ to evaluate anew Plaintiff's testimony.

## V.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). With regard to Plaintiff's physical impairments, the ALJ is required to evaluate Dr. Leinenbach's medical opinion and to reassess Plaintiff's and C.S.'s testimony. With regard to mental impairments, as to "round one" Drs. Wingate's and Moslin's medical opinions are credited as true. The ALJ must on remand complete a second round of analysis in order to

1   determine whether Plaintiff's drug use is material, that is, whether Plaintiff would still be found

2   disabled if she stopped using drugs or alcohol.

3        Dated this 2nd day of February, 2023.

4

5                           MICHELLE L. PETERSON

                           United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23